IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| ZAIDAN ABED-RABUH, | ) | Case No. 3:17-cv-15 |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| JAGDAT HOOBRAJH, TRINITY TRUCKING EXPRESS, INC., J & J INTERNATIONAL, LLC, and ST. GEORGE TRUCKING & WAREHOUSE, INC., | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment and to Bar the Testimony of Plaintiff's Proposed Expert Ruth Jones, D.O. (ECF No. 74.) This Motion is fully briefed (*see* ECF No. 75, 77-78, 80) and is ripe for disposition. For the reasons that follow, the Court will **DENY** Defendants' Motion.

I.  Background

  A.  Factual History[1]

This case arises from a trucking accident that took place on the Pennsylvania Turnpike in Bedford County, Pennsylvania on February 21, 2015. (*See* ECF No. 1 ¶¶ 9-10.) Plaintiff Zaidan Abed-Rabuh alleges that he was injured when the tractor trailer he was

---

[1] Unless otherwise noted, the Court derives these facts from Defendants' Concise Statement of Material Facts (ECF No. 76) and Plaintiff's Responsive Statement of Material Facts. (ECF No. 77.)

driving collided with the tractor trailer driven by Defendant Jagdat Hoobrajh, which was disabled on the side of the road at the time of the accident. (*Id.* ¶ 10.)

Hoobrajh lost control of his tractor trailer when he hit a patch of snow or ice in the road, causing his tractor trailer to collide with the median. (ECF No. 70 at 5.) Hoobrajh unsuccessfully attempted to restart his tractor trailer's engine. (*Id.*) Plaintiff states that Hoobrajh did not illuminate the emergency flashers on his vehicle after he collided with the median. (*Id.* at 6.) Hoobrajh claims that he could not illuminate the tractor trailer's emergency flashers since the truck was without power and that he did not have time to place reflective triangles or flares in the roadway. (*Id.*)

Plaintiff was traveling westbound on the Pennsylvania Turnpike sometime after Hoobrajh collided with the median. (*Id.*) Plaintiff testified that he was driving approximately 50 miles per hour when he first saw Hoobrajh's tractor trailer, which was approximately 100 feet away. (*Id.*) Plaintiff's tractor trailer collided with Hoobrajh's tractor trailer. (*Id.*) Plaintiff testified that he could not get out of the way of Hoobrajh's trailer on the right side of the roadway. (*Id.*) Instead, Mr. Abed-Rabuh testified that he "decided to go all the way to the left so [he] could hit [Mr. Hoobrajh's truck] from the other side." (*Id.* at 7.) Both drivers allegedly violated Pennsylvania law by driving too fast for roadway conditions at the time of the accident. (*Id.* at 7.)

Plaintiff retained Dr. Ruth Jones, D.O. as an expert in this case. (ECF No. 76 ¶ 2; ECF No. 77 ¶ 2.) Dr. Jones submitted two expert reports in this case. (*See* ECF Nos. 76, 74-4 at 1-9.) In her first expert report, Dr. Jones detailed Plaintiff's injuries and opined that they were caused by the trucking accident. (ECF No. 74-4 at 5.) Dr. Jones also opined

Plaintiff will not be able to return to his occupation as a truck driver. (ECF No. 74-4 at 6.) Dr. Jones also issued a supplemental report criticizing the opinions of Defendants' expert. (ECF No. 76 ¶ 3; ECF No. 77 ¶ 3.) Defendants challenge Dr. Jones's expert opinion in their Motion for Summary Judgment. (ECF No. 76 ¶¶ 5-21.)

### B. Procedural History

Plaintiff filed his Complaint on January 30, 2017. (*See* ECF No. 1.) Plaintiff brought claims against Jagdat Hoobrajh, Trinity Trucking Express, Inc., J&J International, LLC, and St. George Trucking and Warehousing, Inc. (*Id.*) St. George Trucking and Warehousing was dismissed from the case by stipulation. (ECF No. 67.) Accordingly, the Court refers to Hoobrajh, Trinity Trucking Express, Inc., and J&J International, LLC collectively as "Defendants" throughout this opinion.

From June of 2017 until November of 2018, the parties engaged in discovery. (*See* ECF Nos. 42, 45, 50, 62.) On October 30, 2018, Plaintiff filed a Motion for Summary Judgment and a Motion for Judgment on the Pleadings. (ECF Nos. 54-55, 57-59.) The Court denied those Motions in a Memorandum Opinion and Order on January 8, 2019. (ECF No. 70.)

Defendants filed the instant Motion for Summary Judgment (ECF No. 74) on February 22, 2019.

## II. Jurisdiction

The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332 because Plaintiff is a resident of Washington, Defendants are residents of New York and New Jersey, and the amount-in-controversy exceeds $75,000. (*See* ECF No. 1.) Venue is

proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in the Western District of Pennsylvania. (*Id.* at 2.)

III. **Standard of Review**

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the

-4-

party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11, (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

IV. Discussion

Defendants argue that they are entitled to summary judgment because Dr. Jones's opinions should be excluded under Federal Rule of Evidence 702. (ECF No. 75 at 2.) Defendants attack Dr. Jones's qualifications and the reliability of the methodology underlying her opinions. (*Id.*) Defendants argue that Plaintiff's negligence claim fails as a matter of law without expert testimony to establish causation. (*Id.* at 14.)

A. Expert Testimony is Necessary in this Case

As a preliminary matter, the Court must determine whether expert testimony is necessary for Plaintiff to establish his claims. The Third Circuit has explained that:

> expert evidence is not necessary . . . if all the primary facts can be accurately and intelligibly described to the jury, and if they, as [persons] of common understanding, are as capable of comprehending the primary

> facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training of the subject under investigation.

*Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000) (quoting *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 415-16 (3d Cir. 1999)).

Generally, expert testimony is necessary to establish how an injury was caused. *See Olchena v. Dinoia*, 45 F. App'x 100, 101 (3d Cir. 2002); *Hook v. Whiting Door Mfg. Co.*, No. 3:15-281, 2019 WL 630324, at *7 (W.D. Pa. Feb. 14, 2019) (Gibson, J.); *Oddi*, 234 F.3d at 159 (holding that expert testimony was necessary to determine the cause of the plaintiff's injuries).

The Court finds that expert testimony is necessary in this case. Plaintiff alleges that he was injured in the collision between his tractor trailer and Hoobrajh's tractor trailer. To prevail on his negligence claim, he must prove that the collision caused his injuries. *See Hook*, 2016 WL 630324, at *13. To accurately assess if the collision caused Plaintiff's injuries, the jury will need to consider testimony about medical concepts. The special and particular insight of medical professionals is necessary to evaluate and contextualize this medical testimony. Accordingly, the Court finds that expert testimony is necessary in this case.

### B. Rule 702—The Admissibility of Expert Testimony

"Under the Federal Rules of Evidence, a trial judge acts as a 'gatekeeper' to ensure that 'any and all expert testimony or evidence is not only relevant, but also reliable.'" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (citing *Kannankeril v. Terminex Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). Therefore, when a party seeks to admit expert

testimony, the Court must make a preliminary determination that the requirements of Federal Rule of Evidence 702 have been met. *Magistrini v. One Hour Martinizing Dry Cleaning*, 68 F. App'x 356, 356 (3d Cir. 2003) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)).

Under Federal Rule of Evidence 702:

a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702(a); *see also United States v. Walker*, 657 F.3d 160, 175 (3d Cir. 2011).

The Third Circuit has interpreted Rule 702 as having three major requirements. *Yoder v. Sportsman's Guide, Inc.*, No 2:14-cv-937, 2015 WL 7009547, at *6 (W.D. Pa. Nov. 12, 2015) (citing *Pineda*, 520 F.3d at 244; *Kannankeril*, 128 F.3d at 806). First, the proffered witness must be qualified as an expert. *Pineda*, 520 F.3d at 244. Second, the expert must testify about matters requiring scientific, technical, or specialized knowledge and base his or her opinions on reliable processes and techniques. *Id.*; *In re Paoli R.R. Yard Litig.*, 35 F.3d 717, 742 (3d Cir. 1994). Third, the expert's testimony must assist the trier of fact. *Pineda*, 520 F.3d at 244.

First, the qualification prong "requires that the witness possess specialized expertise." *Id.* (citing *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.

2003)); *Daubert*, 509 U.S. at 592-93. The Third Circuit has interpreted this requirement liberally. *Id.* (citing *Paoli*, 35 F.3d at 741).

"The second requirement is that of reliability." *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 788 (3d Cir. 2009) (citing *Daubert*, 509 U.S. at 589). The Third Circuit has identified several factors for courts to consider in making the reliability determination:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally acceptable; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Id.* (citing *Paoli*, 35 F.3d at 742 n.8).

The reliability inquiry is flexible, and the relevance of each factor depends on the nature of the issues and the subject of the testimony. *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The reliability inquiry is designed "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "The analysis of the conclusions themselves is for the trier of fact when the expert is subject to cross-examination." *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999).

The third element—that the expert's testimony would assist the trier of fact—"goes primarily to relevance." *Meadows*, 306 F. App'x at 790 (quoting *Lauria v. Amtrak*, 145 F.3d

593, 599 (3d Cir. 1998)). This is also referred to as the "fit" requirement. *See Daubert*, 509 U.S. at 591. "The standard for the factor is not high; it is met where there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an issue in the case." *Id.* (quoting *Paoli*, 35 F.3d at 745); *see also In re TMI Litig.*, 193 F.3d at 670 ("[A]dmissibility depends, in part, on a connection between the expert opinion offered and the particular disputed factual issues in the case."). "[E]xpert testimony based on assumptions lacking factual foundation in the record is properly excluded under the fit requirement." *Meadows*, 306 F. App'x at 790 (citing *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002)).

### C. Dr. Jones is Qualified to Render an Expert Opinion in this Case

First, Defendants argue that "Dr. Jones, a family medicine doctor—and not an orthopedist or biomechanical engineer—does not have the requisite qualifications to give an opinion that Plaintiff's claimed orthopedic injuries are casually related to this accident." (ECF No. 75 at 15.) Defendants argue that Dr. Jones is not qualified to render an opinion on causation because she does not have specialized experience in surgery or treating complicated orthopedic injuries. (*Id.* at 16.) They also argue that Dr. Jones does not have the biomechanical expertise to render an opinion on causation in this case. (*Id.* at 16-17.)

In response, Plaintiff argues that Dr. Jones's education, training, and experience qualify her to testify on the cause of Plaintiff's injuries. (ECF No. 78 at 8.) Plaintiff argues that Defendants' arguments go to the weight of Dr. Jones's testimony, not its admissibility. (*Id.*) The Court agrees.

As previously stated, the Third Circuit has liberally construed the qualification requirement. *Paoli*, 35 F.3d at 741. It is well-established that an expert does not need to be the "best" or have the most appropriate specialization for his or her testimony to be admissible. *Holbrook v. Lykes Bros. Steamship Co., Inc.*, 80 F.3d 777, 782 (3d Cir. 1996). "[A] broad range of knowledge, skills, and training qualify an expert." *Id.*

The Court finds that Dr. Jones's education, training, and experience qualify her to testify on the cause of Plaintiff's injuries. Dr. Jones has a medical degree and was a board-certified physician. (ECF No. 78 at 8.) She worked as a family practitioner from May of 1999 until 2019. (*Id.*) Dr. Jones was also an instructor of osteopathic manipulative therapy at a medical school. (*Id.*) In sum, Dr. Jones's education and experience in the medical field qualifies her to render an expert opinion in this case. *See Holbrook*, 80 F.3d at 781-82 (reversing district court's exclusion of doctor's testimony and holding that treating physician, while not an oncologist, was still qualified to render an opinion on plaintiff's cancer).

### D. The Court will Not Exclude Dr. Jones's Testimony Based on the Methodology Underlying Her Opinions

Second, Defendants argue that Dr. Jones's testimony must be excluded because her opinions are based upon unreliable methodology. (ECF No. 75 at 8-13.) Defendants argue that Dr. Jones speculated about the amount of force that the accident generated. (*Id.* at 10.) They point out that Dr. Jones did not undertake any testing or perform calculations to determine how much force the accident generated. (*Id.* at 10-11.) And finally,

Defendants argue that Dr. Jones's opinions are impermissibly based on the assumption that Plaintiff's shoulders absorbed the force of the accident. (*Id.* at 11.)

In response, Plaintiff argues that Dr. Jones's testimony is admissible although Dr. Jones is unable to pinpoint exactly what caused Plaintiff's shoulder injuries. (ECF No. 78 at 10.) Rather, Plaintiff argues that Dr. Jones's testimony is reliable because she based her opinions on record evidence. (*Id.* at 9.)

Here, the Court finds that the Third Circuit's reliability factors weigh in favor of permitting Dr. Jones to testify.[2] It was not possible for Dr. Jones to utilize a testable hypothesis in this case. To formulate an opinion on the cause of Plaintiff's injuries, she objectively reviewed Plaintiff's medical records and conducted a physical examination of Plaintiff. (*Id.* at 2-9.) Then, based on this information, she opined that Plaintiff's injury was caused by the accident. It is not clear that Dr. Jones could have utilized a testable hypothesis. Rather, she reached her conclusion based on her analysis of record evidence and her medical judgment. It follows that Dr. Jones's methods are not peer-reviewed or subject to a known rate of error.

---

[2] As noted in the preceding subsection, the Third Circuit has identified several factors for courts to consider in making the reliability determination:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally acceptable; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Meadows*, 306 F. App'x at 788 (citing *Daubert*, 509 U.S. at 589) (citing *Paoli*, 35 F.3d at 742 n.8).

It is generally accepted that medical experts can reach conclusions based on a review of medical records and a physical examination of a subject. In other cases, courts have held that a medical professional can make a reliable determination either by reviewing a patient's medical records or conducting a physical examination of the patient. *Paoli*, 35 F.3d at 762 ("[E]valuation of the patient's medical records, like performance of a physical examination, is a reliable method of concluding that a patient is ill even in the absence of a physical examination."); *Kannankeril v. Terminix Intern., Inc.*, 128 F.3d 802, 807 (3d Cir. 1997); *Yarchak v. Trek Bicycle Corp*, 208 F. Supp. 2d 470, 498 (D. N.J. 2002) (holding that a doctor's review of plaintiff's medical records was a reliable method to determine causation of plaintiff's impotency).

Here, Dr. Jones thoroughly reviewed Plaintiff's medical records. In her expert report, Dr. Jones summarizes the findings of other physicians who examined Plaintiff. (ECF No. 74-4 at 2-3.) She notes where the physicians identified the causes of Plaintiff's injuries. (*Id.*) For instance, Dr. Jones notes that an orthopedic surgeon stated that "[i]t looks as though he tore the rotator cuff when he had this motor vehicle accident." (*Id.* at 4.) Additionally, she conducted a physical examination of Plaintiff. (*Id.* at 8.) These are reliable methods for establishing the causation of an injury.

And as previously discussed, Dr. Jones is a qualified medical professional. As an experienced family medicine practitioner, Dr. Jones was experienced in applying the methodology she used in this case. Family medicine practitioners routinely review medical records, take medical histories from patients, and then examine them to form

medical opinions. This also indicates that Dr. Jones's methodology has well-established non-judicial uses.

Defendants' arguments go to the weight of Dr. Jones's testimony, not its admissibility. *See Hayduk v. City of Johnstown*, No. 3:2005-cv-294, 2009 WL 3335339, at *2 (W.D. Pa. June 4, 2009) (Gibson, J.) ("[E]vidence that is admissible although questionable, or shaky, can of course be tested and challenged through the traditional and appropriate means of cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.") (internal quotation marks omitted). Defendants can question Dr. Jones's knowledge of and assumptions about kinetic forces on cross examination.

Accordingly, based on the Third Circuit's reliability factors, the Court finds that Dr. Jones's opinions are based upon reliable methodology.

## V. Conclusion

Based on the foregoing, the Court will not exclude the testimony of Dr. Ruth Jones. Therefore, Defendants' Motion for Summary Judgment and to Bar the Testimony of Plaintiff's Proposed Expert Ruth Jones, D.O. (ECF No. 74) is **DENIED**. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZAIDAN ABED-RABUH, | ) | Case No. 3:17-cv-15 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| JAGDAT HOOBRAJH, TRINITY TRUCKING EXPRESS, INC., J & J INTERNATIONAL, LLC, and ST. GEORGE TRUCKING & WAREHOUSE, INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 30th day of May, 2019, upon consideration of Defendants' Motion for Summary Judgment and to Bar the Testimony of Plaintiff's Proposed Expert Ruth Jones, D.O. (ECF No. 74) and for the reasons stated in the Court's Memorandum Opinion, **IT IS HEREBY ORDERED** that the motion is **DENIED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE